UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO._____

_____
                                    )
EMAD SIDDEEQ                        )
                Plaintiff.          )
                                    )
v.                                  )
                                    )
WHOLE FOODS MARKET GROUP, INC. )
                Defendant.          )
_____)

**<u>VERIFIED COMPLAINT AND JURY DEMAND</u>**

**<u>INTRODUCTION</u>**

Emad Siddeeq faced constant, continuous harassment and discrimination throughout his employment at Whole Foods Market Group, Inc. that was solely based on his religion, ethnicity and national origin which, in turn, created a hostile work environment for him. Moreover, as Whole Foods Market Group, Inc. outright agrees, the Whole Foods Ink Block location in Boston, Massachusetts is embedded in an anti-Muslim "culture" where it became the norm to degrade and disparage Mr. Siddeeq simply because of his religion, national origin and ethnicity.

**<u>PARTIES</u>**

1.      The Plaintiff, Emad Siddeeq ("Siddeeq"), is an individual currently residing in Revere, Suffolk County, Massachusetts.

2.      The Defendant, Whole Foods Market Group, Inc. ("Whole Foods") is a corporation organized under the laws of Delaware with its principal place of office located in Austin, Texas.

## JURISDICTION AND VENUE

3.     This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C

§ 2000e-2, *et seq.*

4.     This Court has original jurisdiction and venue over this action pursuant to 42 U.S.C.

§2000e-5(f)(3); 28 U.S.C. §§ 1331 and 1343.

5.     A charge concerning discrimination based on religion and national origin was

timely filed with the Massachusetts Commission Against Discrimination ("MCAD") and the

Equal Employment Opportunity Commission ("EEOC").

6.     On August 10, 2016, at the request of Siddeeq, the Equal Employment Opportunity

Commission issued a right to sue letter concerning those claims.  Siddeeq, also, at his own

initiative, removed his case from MCAD in order to bring this action.

7.     This Complaint was filed within 90 days of the date of receipt of that letter.

8.     In furtherance of its federal jurisdiction, this court has jurisdiction pursuant to

28 U.S.C. § 1332.

9.     The Court also has supplemental jurisdiction over the state law claims pursuant to

28 U.S.C. § 1367.

10.    Further, venue is proper pursuant to 28 U.S.C. § 1391(a).

## FACTS

11.    Whole Foods is a national supermarket chain that specializes in selling organic

food.

12.    Siddeeq was employed at Whole Foods and worked full time (between 70 to 90

hours per week) as a stocker.  Siddeeq primarily worked overnight shifts.

13.   Siddeeq started working at Whole Foods on or around August 21, 2013.  On or around January 5, 2015, Siddeeq began working at the newly opened Ink Block Whole Foods location in the South End of Boston, Massachusetts ("Ink Block").

14.   Siddeeq is an Iraqi refugee and is a Muslim.

15.   Throughout his employment at Whole Foods, Siddeeq was an exemplary employee who regularly worked overtime.  Siddeeq routinely got raises and promotions because of his superior work ethic.[1]

16.   However, when Siddeeq started working at Ink Block, he endured severe, pervasive discrimination and harassment based solely on his religion and national origin.

17.   Siddeeq routinely complained to his supervisors at Whole Foods about the discrimination and harassment, yet no remedial action was taken.

A.   **DIFFERENT INSTANCES OF HARASSMENT, DISCRIMINATION AND HOSTILE WORK ENVIRONMENT SIDDEEQ FACED DAILY BECAUSE OF HIS RELIGION AND NATIONAL ORIGIN.[2]**

18.   At all times relevant, Canthony Pham ("Pham") and Collinsford Asamoah ("Asamoah") were employees with Siddeeq at the Ink Block Whole Foods.

19.   During Siddeeq's employment at Ink Block, Pham and Asamoah systematically discriminated and harassed Siddeeq, calling him vile and disgusting names, as set forth in detail below, simply because Siddeeq is Muslim and from Iraq.

20.   The hate-filled discrimination and harassment started around two weeks after Siddeeq began working at Ink Block.  Nearly *every* shift Siddeeq worked, he faced

---

[1] As referenced in Section C below, Whole Foods "admits that Siddeeq received raises and promotions during his time at the Company and often worked overtime."
[2] As described in detail in Section "C", Whole Foods readily admits virtually all of the below allegations of verbal abuse and discrimination.

discrimination, harassment and a hostile work environment because of his religion and national origin.

21.    On multiple occasions, Pham and Asamoah told Siddeeq that he was a "terrorist" because he was Muslim.  Siddeeq was called a "terrorist" or "Muslim terrorist" by Pham and Asamoah more times than he can remember.

22.    Both Pham and Asamoah would also routinely comment to Siddeeq that "all Muslims are terrorists" and "all Muslims like to kill."

23.    Pham and Asamoah would also tell Siddeeq on a regular basis that he was going to "blow up" Ink Block because he was a Muslim terrorist.

24.    Further, when Pham and Asamoah saw any customers at Ink Block that appeared to be of Arab descent or Muslim, they would tell Siddeeq that those customers were also terrorists, just like him.

25.    Further, Pham also repeatedly called Siddeeq "Bin Laden" because Siddeeq is Muslim and has a beard.  Siddeeq was referred to as Bin Laden by Asamoah and Pham more than he was called by his actual name.

26.    Pham would also tell Siddeeq that he "prays to shit" on a regular basis.

27.    Additionally, both Pham and Asamoah would regularly call Siddeeq a "stupid Iraqi" or "Iraq" and tell him he should go back to the dessert and to go "eat sand" because he was Muslim from Iraq.  They would also tell Siddeeq that because he was from Iraq that he "must ride a camel."  Moreover, Pham and Asamoah would tell Siddeeq that they would buy him an airline ticket to send him back to Iraq where he belongs.

28.    On one occasion, in or around June 2015, Pham's car was stolen.  Pham immediately accused Siddeeq of stealing the car "because he was Muslim."  Further, when

Pham's cell phone went missing one day, Siddeeq was accused by Pham of stealing it because "he was Muslim."

29.   Further, both Pham and Asamoah would regularly harass and ridicule Siddeeq because he consumed Halal food (foods that are permissible for Muslims to eat or drink).  They both would tell Siddeeq that "you only eat Halal meat, which is why you behead people."

30.   To make the hostile work environment even worse, Pham and Asamoah would also habitually do the "throat slash" gesture with their hands, directed at Siddeeq.  When Siddeeq asked them to stop making the gesture, Pham told him, "you are Muslim, you like to cut people's heads off."

31.   Further, when Siddeeq brought his young child to Ink Block, Pham would even go so far as to call Siddeeq's son a terrorist.  He would also tell Siddeeq that his son "looked stupid like you."

32.   Asamoah would also tell Siddeeq that because Siddeeq worked long hours, his wife would sleep with other men while he was away.

33.   In late October 2015, Asamoah told Siddeeq that because he was Muslim, he was a "soft women" with no courage.

34.   The abuse was not only verbal, it was also physical.  On one occasion, in or around August 2015, Asamoah snuck up behind Siddeeq and deliberately pushed a hand jack into Siddeeq's leg, causing Siddeeq to suffer a foot injury.  Asamoah said it was an "accident," even though he was laughing at Siddeeq when Siddeeq fell to the ground.  There is no doubt in Siddeeq's mind that Asamoah deliberately hit him with the hand jack because Siddeeq is Muslim and Iraqi.

35.    To this day, Siddeeq still suffers from a foot injury, and is under medical care, because of Asamoah's deliberate hateful act of pushing the hand jack into Siddeeq's leg.

36.    Prior to the hand-jack incident, Siddeeq was also physically assaulted by Asamoah. On two occasions, once near the seafood department and once in the middle isles, Asamoah pushed a wood pallet on Siddeeq's leg, causing Siddeeq injury.  There is no doubt in Siddeeq's mind that Asamoah deliberately pushed the wood pallet on Siddeeq's leg because Siddeeq is Muslim and Iraqi.

37.    Furthermore, on at least five separate occasions, prior to the hand-jack incident, while Siddeeq was busy working in the frozen section of Ink Block, Asamoah intentionally swung the freezer door at Siddeeq's head.  After this happened, Siddeeq would question Asamoah on why he purposely hit his head with the freezer door, Asamoah would simply smile and laugh.  There is no doubt in Siddeeq's mind that Asamoah deliberately pushed the freezer door at Siddeeq's head because Siddeeq is Muslim and Iraqi.

38.    Further, Asamoah purposely cut Siddeeq's finger with a box cutter while Asamoah passed a box to Siddeeq.  Asamoah also knowingly slammed Siddeeq' shoulder with a heavy box he was carrying.  When Siddeeq told Asamoah that he hurt him, Asamoah responded by smiling. Again, there is no doubt in Siddeeq's mind that Asamoah deliberately hurt Siddeeq's hand and shoulder because Siddeeq is Muslim and Iraqi.

39.    To be sure, Asamoah never apologized to Siddeeq for any occasion he physically assaulted him.

40.    Moreover, Pham intentionally slammed Siddeeq's right hand with the backroom door.  When Siddeeq told Pham to be more careful, Pham responded by saying "I want to cut your hands."

41.   Moreover, both Asamoah and Pham would also try and deliberately sabotage Siddeeq's work by rearranging the goods in an incorrect location or removing the tags Siddeeq put on certain goods.   Again, there is no doubt in Siddeeq's mind that Asamoah and Pham attempted to sabotage Siddeeq's work because Siddeeq is Muslim and Iraqi.

42.   Because of the daily harassment, discrimination and the hostile work environment at Ink Block, Siddeeq would often tell his wife that he was "going to war" instead of going to work. This is quite ironic given the fact that Siddeeq actually fled his home country of Iraq because of war.

43.   Siddeeq has suffered significant emotional distress because of the harassment, discrimination and hostile work environment.   Because of the emotional distress, Siddeeq has been under professional medical care and prescribed medication for the emotional distress he faced.

44.   Specifically, Siddeeq has been under the care of two doctors, a psychologist and his primary care doctor because of the harassment and hostile work environment he faced.  In fact, Siddeeq has been on a daily regimen of four anti-anxiety medications, solely because of the harassment and discrimination he faced at Ink Block.

45.   Moreover, it is not only anxiety Siddeeq suffers from.  Because of the harassment and hostile work environment he faced at Whole Foods, Siddeeq has suffered from depression, heart palpitations, loss of sleep, being constantly sad, severe headaches and serious stomach issues.

**B.** **SIDDEEQ COMPLAINS TO WHOLE FOODS MANAGEMENT ABOUT THE DISCRIMINATION, HARASSMENT AND HOSTILE WORK ENVIRONMENT, YET NO REMEDIAL ACTION WAS TAKEN.**

46.   Not only did Siddeeq regularly beseech Pham and Asamoah to stop harassing and discriminating against him; he also complained to his supervisors and managers about the discrimination, hostile work environment and harassment.

47.   In the ten-month span Siddeeq worked at the Ink Block, Siddeeq complained to his supervisor, Dionisio Cacho ("Cacho"), his "Associate Team Leader" Joseph Anecone ("Anecone") and his "Team Leader" George Mouradian ("Mouradian") that he was being discriminated and harassed a total of six times.  However, no remedial action was ever taken.

48.   Specifically, Siddeeq complained to his supervisors on the following dates:

a.   On or about March 17, 2015 Siddeeq complained to Mouradian;

b.   On or about May, 20 2015 Siddeeq complained to Anecone;

c.   On or about July 13, 2015 Siddeeq complained to Mouradian;

d.   On or about August 21, 2015 Siddeeq complained to Cacho;

e.   On or about October 17, 2015 Siddeeq complained to Mouradian;

f.   On or about October 23, 2015 Siddeeq complained to Mouradian.

49.   To be clear, Siddeeq specifically complained to Whole Foods management about *each and every* disgusting, hate-filled instance of discrimination, including the physical assaults that are described above.

50.   However, on each occasion when Siddeeq complained, he was told that he should try and work out his problems with Pham and Asamoah on his own because "they were adults."[3] Whole Foods management would also tell Siddeeq not to take what Pham and Asamoah said

---

[3] As referenced in Section C, Whole Foods admits to this allegation.

seriously.  Essentially, Whole Foods management told Siddeeq to get "thicker skin" over the revolting hate speech spewed by Pham and Asamoah.

51.    Siddeeq was devastated that his complaints were not taken seriously and being overlooked.

52.    When Pham and Asamoah saw that no remedial action was taken, the harassment not only continued, but it got worse.

53.    Incredibly, not only did Siddeeq complain to Whole Foods management several times, but Whole Foods management actually witnessed the discrimination Siddeeq faced.  In particular, Cacho personally witnessed Pham and Asamoah harass and discriminate against Siddeeq because he was Muslim and Iraqi, but made no attempt to remedy the situation.[4]

54.    Furthermore, Anecone routinely witnessed Siddeeq face discrimination, harassment and hostile work environment from Pham and Asamoah.

55.    Moreover, in or around October 2015, when Siddeeq complained to Mouradian about the pervasive discrimination, Mouradian could not control himself from smiling and laughing.  Siddeeq was also told by Mouradian that nothing could be done about the discrimination, and he did not care if Siddeeq liked him or was his friend.  Siddeeq found it very odd that Mouradian would mention anything about friendship with Mouradian when Siddeeq was complaining about the serious discrimination he was enduring.

56.    Because of the non-stop discrimination, harassment and hostile work environment, Siddeeq requested that his supervisors move his shifts to a different time in order not to work with Pham and Asamoah.  Siddeeq even requested to be moved to a different department to

---

[4] As referenced in Section C, Whole Foods admits to this allegation.

avoid any interaction with Pham and Asamoah.  These requests would fall on deaf ears with Whole Foods management.

**C.**     **WHOLE FOODS ADMITS IT ROUTINELY DISCRIMINATED AGAINST SIDDEEQ AS PART OF ITS "CULTURE."**

57.    Whole Foods readily admits that it participated in the foregoing vicious harassment and discrimination against Siddeeq in what Whole Foods described itself as, the "culture of the Grocery Overnight Team."  *See* Whole Foods MCAD Position Statement, without attachments, ("Position Statement") attached hereto as <u>Exhibit A</u>.[5]

58.    In its Position Statement filed with the MCAD, Whole Foods condones anti-Muslim rhetoric as part of its culture and tries to pass it off as simply "joking" and "banter."  *See generally*, Position Statement.

59.    This is made clear throughout Whole Foods' "Answer" portion of its Position Statement, beginning at page 13.  Specifically, Whole Foods admits the following discriminatory and unlawful actions occurred:

a.    Pham called Siddeeq a "terrorist" or Muslim terrorist" (*See* Position Statement at ¶ 13);

b.    Pham told Siddeeq that "all Muslims are terrorists" or "all Muslims like to kill" (*See* Position Statement  at ¶ 14);

c.    Pham told Siddeeq he was going to "blow up" the Ink Block location of Whole Foods (*See* Position Statement  at ¶ 15);

d.    Pham called Siddeeq "Bin Laden" (*See* Position Statement  at ¶ 17);

e.    Pham and Asamoah called Siddeeq "Iraq" (*See* Position Statement  at ¶ 19);

f.    Pham and Asamoah told Siddeeq to go back to the desert, "eat sand" and "ride a camel" (*See* Position Statement  at ¶ 19);

---

[5] Notwithstanding Whole Foods shocking admissions, Siddeeq's position is that Whole Foods MCAD Position Statement is riddled with misstatements and inconsistencies.  Siddeeq's Rebuttal addressed these inconsistencies. *See* Siddeeq's MCAD Rebuttal to Whole Foods Position Statement (without exhibits) attached hereto as <u>Exhibit B</u>.

g.      Pham made the "throat slash" gesture to Siddeeq (*See* Position Statement  at ¶22);

h.      Asamoah told Siddeeq that his wife would "sleep with other men" (*See* Page 3 of Position Statement).

i.      Siddeeq complained to management about Asamoah physically assaulting him with the hand jack and box cutter.  (*See* Page 5 of Position Statement).

60.    Whole Foods also admits Siddeeq's supervisors witnessed the discrimination, yet did nothing to remedy it.

61.    Specifically, in its Position Statement, Whole Foods admits Cacho, Siddeeq's supervisor, personally witnessed Siddeeq's discrimination (or as Whole Foods like to call it "joking and name calling") and tried to remedy the situation by telling Siddeeq he needed to work out his problems with Pham and Asamoah because "they were all adults." (*See* Position Statement at ¶ 34, 37).

62.    Whole Foods also admits that Siddeeq requested to transfer his shifts from the grocery department to produce.

63.    It is shocking that a prominent national company like Whole Foods would state that the above shameful insults were only "made in a joking context" and was part of their "culture." *See generally* Position Statement.

64.    In no uncertain terms can the foregoing be defined as "joking."  Further, because this blatant discrimination is self-described and being part of the "culture" of Whole Foods, drastic remedial measures need to be taken to cleanse Whole Foods of its discriminatory, harassing and bigotry "culture."

65.    Moreover, there is no dispute that Siddeeq ever "joked" by calling himself a "terrorist, "Muslim terrorist," "Bin Laden," "all Muslims like to kill," that Siddeeq ever teased he

was going to "blow up" Whole Foods, or that Siddeeq joked about praying to shit,  or any other "jokes" about *his religion* for that matter.

66.    In fact, if he ever "joked" about being a "terrorist," that "all Muslims like to kill" or "Bin Laden," he would likely be reported by Whole Foods to the proper authorities.

**D.    OCTOBER 25, 2015 INCIDENT.**

67.    The harassment culminated on October 25, 2015.  On that day, Siddeeq was at the end of his overnight shift when Asamoah started harassing Siddeeq.

68.    As Siddeeq was simply performing his job duties, completely unprovoked, Asamoah began harassing Siddeeq.  Asamoah started swearing and screaming at Siddeeq in a condescending and patronizing voice that he needed to work faster.  To be sure, Asamoah does not have a management position over Siddeeq.

69.    As usual, Siddeeq asked Asamoah to stop harassing him, mind his own business, and to focus on his own job.

70.    However, Asamoah did not relent, and continued to swear loudly at Siddeeq. Siddeeq again asked Asamoah to stop.

71.    It was unequivocal in Siddeeq's mind that Asamoah, as usual, was harassing him because he was Muslim and Iraqi.

72.    Asamoah continued to loudly swear at Siddeeq and continued to tell him to "hurry up."  For a third time, Siddeeq pleaded with Asamoah to stop.

73.    Instead of stopping, Asamoah approached Siddeeq in a threatening manner and continued to raise his voice and swear.  Asamoah was clearly trying to provoke Siddeeq. Siddeeq was finally "pushed to the edge," after nearly a year of constant daily harassment and discrimination, so he pushed Asamoah in an effort to get him to stop.

74.   Asamoah then punched Siddeeq in the face and scratched him repeatedly on Siddeeq's neck.  Siddeeq suffered injuries to his neck and face at the hands of Asamoah.

75.   After around 10-15 seconds of Siddeeq trying to get away from Asamoah, Asamoah stopped the assault and Siddeeq walked away.

76.   Asamoah continued to walk towards Siddeeq to continue his assault.  However, Siddeeq walked away to report the incident to management.

77.   After Siddeeq explained what happened to Whole Foods management, he was told to go home for the day.

78.   A few days after the incident with Asamoah, Mouradian and Kris Atwood, ("Atwood") who was Ink Block's Team Leader, called Siddeeq on the telephone to inform him that he was terminated, effective immediately.

79.   During the phone conversation, Siddeeq again raised the issue of the daily abuse and discrimination he faced.  Siddeeq explicitly told Mouradian and Atwood that for "nine, months, every single day, every single night, I hear[d] something bad about my religion, my culture … is all that not against the policy of the company?"

80.    Siddeeq continued and said, "what about my rights?  I told George [Mouradian].  I told everyone, nobody cared …because I am Arabic and Muslim."

81.   Atwood responded by saying "I can't speak to that."

82.   Siddeeq believes he was terminated because he complained about the discrimination and harassment he faced.

83.   Since his termination, Siddeeq has received harassing multiple phone calls on his cell phone from Pham.

84.    Specifically, on January 5, 2016, Siddeeq picked up a call from Pham, and Pham mocked and laughed at him.  After Siddeeq hung up, Pham immediately called back but Siddeeq refused to be mocked and did not answer.  Again on February 8, 2016, Pham called Siddeeq twice, but Siddeeq did not answer his phone.  *See* Screenshot of Siddeeq's phone with Pham's phone number, attached hereto as Exhibit C.

85.    Asamoah and Pham remain, to this day, employees of Whole Foods at Ink Block.

86.    To be sure, Siddeeq was "pushed to the edge" and got into a physical fight with Asamoah because of the discrimination, harassment and hostile work environment he faced daily.  In other words, but for the discrimination and hostile work environment, there would not have been an incident between Siddeeq and Asamoah.

87.    Put another way, the only reason the physical altercation transpired was because Siddeeq was constantly berated by both Pham and Asamoah simply because he was Muslim and Iraqi, and Whole Foods refused to remedy the situation—by either properly reprimanding Pham and Asamoah—or at the very least, switching Siddeeq's shifts or locations after he requested that be done.

88.    Additionally, that Siddeeq complained six different times to management about the hostile work environment, lodging a complaint as close as a few days before the October 25, 2015 incident with Asamoah, and requesting a transfer to a different Whole Foods location because of the discrimination and hostile work environment, all clearly demonstrates that Siddeeq did not participate, or in any way acquiesced with the degrading discrimination, harassment and hostile work environment he faced.

**E.**    **THE MASSACHUSETTS DEPARTMENT OF UNEMPLOYMENT ASSISTANCE HAS MADE A DETERMINATION THAT SIDDEEQ WAS SUBJECT TO "PERVASIVE" DISCRIMINATION.**

89.    One trier of fact has already determined that Siddeeq is a credible witness.  Siddeeq was denied unemployment benefits because Whole Foods' position was that Siddeeq was terminated because he engaged in deliberate misconduct in willful disregard of its interest.  However, on appeal, after a hearing, the Massachusetts Department of Unemployment Assistance reversed and decided Siddeeq was entitled to unemployment benefits.  *See* Massachusetts Department of Unemployment Assistance Appeal Decision ("Decision") attached hereto as Exhibit D.  In the Decision the Appeals Board found, among other things, the following:

a.    Over the course of his employment, the claimant [Siddeeq], who is of the Islamic faith and was born in Iraq, was subject to pervasive verbal harassment by a co-worker.  *See* Decision at Page 1.

b.    Amongst the insults aimed at the claimant, which frequently referenced the claimant's religion, culture, and national origin, the co-worker said variously: "You have a beard like Bin Laden," "You only eat Halal meat, which is why you can behead people," "You're from Iraq, you must ride a camel," and "You're from the desert, you eat sand."  The co-worker also frequently made a "throat-slitting" gesture at the claimant and referred to him as "Iraq," called him a "terrorist" and stated that because the claimant was working at night, his wife slept with another man.  On one occasion, the co-worker said of the claimant's son, "He looks stupid like you."  *See* Decision at Page 1.

c.    In an effort to address the harassment, the claimant asked the co-worker to stop and complained to management on a number of occasions.  The claimant also requested to be transferred to a different shift to avoid having to interact with the co-worker.  His request was denied.  *See* Decision at Page 2.

d.    In or about the week ending October 17, 2015, the claimant complained to his supervisor again.  Although his supervisor indicated that he had spoken to the co-worker, the harassment continued.  *See* Decision at Page 2

e.    The claimant again complained during the week ending October 24, 2015. *See* Decision at Page 2.

f.     On the same day he lodged his complaint, the claimant was brought into a meeting with his co-worker by his supervisor. The supervisor told the two employees to "fix the issue together." The supervisor further stated "I don't care if you don't like me," and declined to specifically reprimand the co-worker. *See* Decision at Page 2.

g.     The claimant, who was "pushed to the edge" by the co-worker's continuing harassment, pushed the co-worker, who responded by punching the claimant in the neck, which caused a visible scrape. *See* Decision at Page 2; *see also* Pictures of "visible scrape" attached hereto as <u>Exhibit E.</u>

h.     In this case, although the claimant understood that he was expected not to engage in fighting while at work, and while he admittedly pushed his co-worker and then engaged in a fight with him, it is concluded that the claimant's actions were not intentional. **The claimant directly and credibly testified that over the course of his employment, he was subject to pervasive harassment based upon his religion, ethnicity, and national origin by the same co-worker who began yelling at him and would not cease on the date of the incident in question.** (Emphasis added). In light of this harassment, I credit the claimant's further testimony that he could no longer tolerate the co-worker's behavior, which "pushed him to the edge" and provoked his physical response. As such, the claimant's decision to push his co-worker – especially in light of the claimant's previous reasonable but unsuccessful efforts to resolve the harassment by complaining about it to the employer [Whole Foods] – was, at worst, a momentary lapse in judgment, and not an example of intentional, disqualifying behavior. *See* Decision at Page 3.

90.   The Decision was not appealed.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
<u>**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. 2000e-2 *et. seq*)**</u>
<u>**(UNLAWFUL DISCRIMINATION)**</u>

91.   Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

92.   Title VII, 42 U.S.C.§ 2000e-2 (a)(1) provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

93.    Further, Title VII, 42 U.S.C. § 2000e-2(m) provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

94.    Siddeeq faced severe, pervasive routine harassment and discrimination, both verbal and physical, because of his religion and national origin throughout his employment at Whole Foods.

95.    Siddeeq complained multiple times about the harassment and discrimination to Whole Foods management, yet, no remedial cation was taken.

96.    Moreover, Whole Foods management personally witnessed the unlawful harassment and discrimination, multiple times, and still took no remedial action.

97.    As a direct and proximate cause of Whole Foods's disparate treatment and unlawful discrimination, Siddeeq suffered significant, irreparable harm and damages.

98.    Whole Foods is liable for damages, attorneys' fees, costs and interest from the date of harm.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. 2000e *et. seq*)
## (HOSTILE WORK ENVIROMENT)

99.    Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

100.  Siddeeq faced severe, pervasive daily uninvited discrimination and harassment, both verbal and physical, because of his religion and national origin throughout his employment at Whole Foods that created a hostile work environment for Siddeeq.

101.  Whole Foods allowed for a workplace "culture" of daily discrimination and harassment that targeted Siddeeq.  By admitting that this daily discrimination was part of Whole Foods' "culture," Whole Foods concedes it did nothing to prevent Siddeeq from being subjected to discrimination, harassment and disparate treatment.

102.  The hostile work environment created by Whole Foods resulted in Siddeeq being humiliated, stigmatized and intimidated.

103.  The hostile work environment created by Whole Foods caused significant interference to Siddeeq's employment.

104.  Siddeeq complained multiple times about the harassment, discrimination and hostile work environment to Whole Foods management, yet, no remedial action was taken.

105.  Moreover, Whole Foods management personally routinely witnessed the unlawful harassment, discrimination and hostile work environment and still took no remedial action.

106.  As a direct and proximate cause of Whole Foods's hostile work environment, Siddeeq suffered significant, irreparable harm and damages.

107.  Whole Foods is liable for damages, attorneys' fees, costs and interest from the date of harm.

### COUNT III
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. 2000e-3(a) (UNLAWFUL RETALIATION)

108.  Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

109.  42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter ..."

110. Siddeeq routinely opposed Whole Foods's unlawful discriminatory conduct.

111. Because of this opposition, Siddeeq was fired from employment at Whole Foods.

112. Further, if Whole Foods was not acting in retaliatory fashion against Siddeeq, Pham and Asamoah should have also both been terminated.

113. Further, a toleration of Siddeeq's hostile work environment is cognizable as a retaliatory adverse employment action for purposes of 42 U.S.C. § 2000e-3(a).

114. As a direct and proximate cause of Whole Foods's disparate treatment and unlawful retaliation, Siddeeq suffered significant, irreparable harm and damages.

115. Whole Foods is liable for damages, attorneys' fees, costs and interest from the date of harm.

## COUNT IV
## VIOLATION OF MGL c.151B, SECTION 4(1) 4(4) 4(4A)
## (UNLAWFUL DISCRIMINATION)

116. Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

117. MGL c. 151 B, Section 4(I) provides that "[i]lt shall be an unlawful practice ... [f]or an employer, by himself or his agent, because of the race, color, religious creed, national origin... or ancestry of an individual ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment ...."

118. Under MGL c. 151B, Section 4(4) "[i]t shall be an unlawful practice ... [f]or any person, employer, labor organization or employment agency to … otherwise discriminate against any person because he has opposed any practices forbidden under this chapter" and under Section 4(4A) "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter."

119. Siddeeq faced severe, pervasive harassment and discrimination, both verbal and physical, because of his religious creed and national origin throughout his employment at Whole Foods.

120. Siddeeq opposed Whole Foods' unlawful discriminatory conduct.

121. Whole Foods also intimidated, threatened and interfered with Siddeeq's exercise of enjoyment by routinely discriminating against him.

122. Siddeeq complained multiple times about the harassment and discrimination to Whole Foods management, yet no remedial action was taken.

123. Moreover, Whole Foods management personally witnessed the unlawful harassment and discrimination, multiple times, and still took no remedial action.

124. As a direct and proximate cause of Whole Foods's disparate treatment and unlawful discrimination, Siddeeq suffered significant, irreparable harm and damages.

125. Whole Foods is liable for damages, attorneys' fees, costs and interest from the date of harm.

## COUNT V
## VIOLATION OF MGL c.151B, SECTION 4(1) 4(4) 4(4A)
## (HOSTILE WORK ENVIROMENT)

126. Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

127. Siddeeq faced severe, pervasive daily uninvited discrimination and harassment, both verbal and physical, because of his religion and national origin throughout his employment at Whole Foods that created a hostile work environment for Siddeeq.

128. Whole Foods allowed for a workplace "culture" of daily discrimination and harassment that targeted Siddeeq.  By admitting that this daily discrimination was part of Whole

Foods' "culture," Whole Foods concedes it did nothing to prevent Siddeeq from being subjected to discrimination, harassment and disparate treatment.

129. The hostile work environment created by Whole Foods resulted in Siddeeq being humiliated, stigmatized and intimidated.

130. The hostile work environment created by Whole Foods caused significant interference to Siddeeq's employment.

131. Siddeeq complained multiple times about the harassment, discrimination and hostile work environment to Whole Foods management, yet no remedial action was taken.

132. Moreover, Whole Foods management personally and routinely witnessed the unlawful harassment, discrimination and hostile work environment and still took no remedial action.

133. As a direct and proximate cause of Whole Foods's hostile work environment, Siddeeq suffered significant, irreparable harm and damages.

134. Whole Foods is liable for damages, attorneys' fees, costs and interest from the date of harm.

## COUNT VI
## VIOLATION OF MGL c. 151B, SECTION 4(4) AND 4(4A)
## (UNLAWFUL RETALIATION)

135. Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

136. Under MGL c. 151B, § 4(4) "[i]t shall be an unlawful practice ... [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter" and under Section 4(4A) "[f]or any person to coerce, intimidate, threaten, or interfere

with another person in the exercise or enjoyment of any right granted or protected by this chapter."

137.  Siddeeq opposed Whole Foods's unlawful discriminatory conduct.

138.  Whole Foods also intimidated, threatened and interfered with Siddeeq's exercise of enjoyment by routinely discriminating against him.

139.  Because of this opposition, Siddeeq was fired from his employment at Whole Foods.

140.  As a direct and proximate cause of Whole Foods's disparate treatment and unlawful retaliation, Siddeeq suffered significant, irreparable harm and damages.

141.  Whole Foods is liable for damages, attorneys' fees, costs and interest from the date of harm.

## COUNT VII
## BREACH OF COVENENANT OF GOOD FAITH AND FAIR DEALING

142.  Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

143.  Whole Foods violated the implied covenant of good faith and fair dealing by engaging in misconduct involving religious and national origin disparate treatment.

144.  As a direct and proximate cause of Whole Foods's disparate treatment and unlawful discrimination, Siddeeq suffered significant, irreparable harm and damages.

145.  Whole Foods is liable for damages, attorneys' fees, costs and interest from the date of harm.

## COUNT VIII
## BREACH OF CONTRACT

146.  Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

147.  Siddeeq and Whole Foods entered into a legally enforceable contract for Siddeeq's employment.

148.  Whole Foods breached said contract.

149.  As a direct and proximate cause of this breach, Siddeeq suffered significant, irreparable harm and damages

150.  Whole Foods is liable for damages, attorneys' fees, costs and interest from the date of harm.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

151.  Siddeeq incorporates and restates the allegations contained in the above paragraphs as if fully set forth herein.

152.  Siddeeq faced daily harassment and discrimination because of his religion and national origin throughout his employment at Whole Foods.

153.  Because of the daily harassment and discrimination, Siddeeq suffered serious emotional distress.

154.  Siddeeq has, and continues to be, under professional medical care and prescribed medication for the emotional distress he faced.

155.  As a direct and proximate cause of Siddeeq's disparate treatment, unlawful discrimination and hostile work environment, Siddeeq suffered significant emotional distress.

WHEREFORE, the plaintiff, Emad Siddeeq, hereby demands the following:

1.  As to Counts I, II, III, IV, V, VI, VII, VIII and IX, that this Court determine the amount of Siddeeq's damages and enter judgment for Siddeeq in said amount, together with interest, attorney's fees, and costs;

2.  That this Court award Siddeeq reasonable attorneys' fees, costs and interest from the date of the harm; and

3.  For such other and further relief as this Court deems just and proper.

<u>**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE**</u>

Respectfully submitted,
EMAD SIDDEEQ
By his attorneys,


/s/Shaun M. Khan_____
Keith L. Sachs (BBO #634025)
Shaun M. Khan (BBO #681080)
METAXAS BROWN PIDGEON LLP
900 Cummings Center, Suite 207T
Beverly, MA  01915
978-927-8000
skhan@metaxasbrown.com

Dated: August 15, 2016

G:\Client Files\Sideeq, Emad\Pleadings\Complaint 8-5-16.docx

[VERIFICATION PAGE TO FOLLOW]

## VERIFICATION

I, Emad Siddeeq, verify that I have read the allegations contained in this Verified Complaint, that I have personal knowledge of the facts, and that the facts stated in the Verified Complaint are true, except those facts alleged upon information and belief and, as to those facts, I believe they are true.

Signed under the penalties of perjury this $\underline{13}$ day of August 2016

EMAD SIDDEEQ